DAVID L. JENNINGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11972. Promulgated March 23, 1948.

*Milton J. Sabath, Esq.,* for the petitioner.
*Maurice S. Bush, Esq.,* for the respondent.

510

OPINION.

ARUNDELL, *Judge*: Petitioner contends that the partnership, consisting of himself, his wife, and his son, is valid for income tax purposes because it meets the tests established in the now familiar cases of *Commissioner* v. *Tower*, 327 U. S. 280, and *Lusthaus* v. *Commissioner*, 327 U. S. 293. The Supreme Court stated in the *Tower* case that a family partnership is entitled to recognition tax-wise if each member "invests capital originating with her [or him] or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things * * *." Respondent argues that an effort to reduce petitioner's income taxes, rather than a bona fide business purpose, prompted the conduct of business in partnership form, and, because the earnings were fully attributable to the personal services of petitioner, they should be taxed to him.

Petitioner urges that his son was a genuine partner because of substantial services performed during the taxable years. He makes no serious contention with respect to the contribution of independent capital or participation in the management of the business.

We think the recognition of the son as a partner is clearly warranted. There is more substance behind his entry into the partnership than a mere plan to effect tax savings through the reallocation of family income. Prior to 1942, petitioner had spent about 25 years supplying railway repair parts and had succeeded in developing a thriving business. At the early age of 15 years his son began working in the office. After one year of general college training he expressed a desire to enter the business, left school, and became a full time employee in 1939, when only 19 years of age. Petitioner wanted his son to share in the business and eventually take full charge, and to that end conducted an extended training program over several

years. From 1939 to 1941 the son devoted his full time and energy to his work, under the direction of petitioner, learning to type, making book entries, handling the mail, gaining technical knowledge of the mechanical devices on sale, and meeting local railroad purchasing agents. Petitioner's advance in years and his newly acquired interest in oil ventures culminated in a written partnership agreement effective January 1, 1942. It is difficult to conceive a more natural motive for the transfer of a one-fourth interest to the son at this time.

Moreover, the son's status as a partner is supported by ample proof of substantial services in the taxable years. He handled the office records alone until a competent bookkeeper was hired, after which he supervised the general office operation. He was also authorized to sign checks without the counter-signature of the petitioner. This relief from the pressure of burdensome though necessary paper work enabled the petitioner to travel on behalf of the business and his other independent interests. Furthermore, in addition to handling some of the smaller railroad accounts for inventoried replacement parts, the son on his own initiative secured new accounts on other equipment items.

Respondent has seen fit to allow one-fourth of the net income for 1942 and 1943 as compensation for the son's services in those years, even though he was in the military service for 7½ months in 1942. It seems to us that this takes much of the force from his argument that these same services are "of an inconsequential nature."

On the facts presented, we conclude that petitioner's adult son performed vital additional services for the business in 1942 and 1943 and therefore was entitled to one-fourth of the partnership net income as a bona fide partner.

With respect to petitioner's wife, no contention is made nor any evidence offered of her participation in the management of the business affairs or the performance of vital additional services. Petitioner seeks to establish her status as a valid partner solely by virtue of the contribution of independent capital.

The written agreement provided for partnership capital totaling $15,000, of which $3,750 was to be contributed by petitioner's wife for a 25 per cent interest in the business. This amount, consisting of her own money, acquired from a source other than her husband, was duly invested at the inception of the new business arrangement.

However, the nature of the enterprise herein is such that personal services rather than capital are the primary factor in the production of income. In essence, the business consists of a specialized merchandising trade, in connection with which an inventory, comprised of specially designed railway supply parts, is maintained. This stock of goods is relatively small in relation to gross sales, but is subject to a

rapid turnover. The success of the business has been largely attributable to the confidence and friendship of key railway officials established by petitioner over a period of years, through wide travel, much entertainment, and diligent selling efforts.

The facts of this proceeding are similar in many respects to those we considered in *Claire L. Canfield*, 7 T. C. 944. In each case it was necessary to decide whether a wife was in partnership with her husband for Federal tax purposes. In both cases the wives made no substantial contributions to the management and control of the enterprise, nor otherwise performed vital additional services. In both cases, however, they did invest approximately one-fourth of the contributed capital, using their own personal funds. Moreover, the annual income of each business was primarily due to personal efforts and services rather than the use of capital.

In these circumstances, we are unable to say that the agreement between petitioner and his wife can conclusively fix their respective tax liabilities any more so than in the *Canfield* case, *supra*. Although the partnership agreement herein made no provision for salaries of the family members, petitioner's counsel concedes that an allowance of compensation for services rendered by petitioner and his son should be made before division of the remaining net profits. Despite this concession, petitioner has offered no evidence bearing directly on the amount of reasonable compensation. Thus, we are left to determine the remuneration for services as best we can from the evidence of record.

We have found that petitioner is entitled to $15,000 as compensation for his services in each of the years 1942 and 1943. We recognize the fact that some of the business accounts were attributable to petitioner's son and that some of the business originated with his salesmen, to whom a commission of 10 per cent was paid on sales made by them. Morever, some of the business came as a result of advertising and other intangible factors. The fact remains, however, that petitioner was the directing head of the business during the taxable years and a large portion of sales was attributable to his efforts and solicitation, his son being absent during part of 1942 in the military service and his engineering employee likewise being away. In short, the burden of securing business was largely dependent on petitioner's own efforts in the taxable years.

We have already concluded that the vital services rendered by petitioner's son, coupled with the respondent's allowance of compensation for these services, justify a holding that petitioner's son is entitled to one-fourth of the partnership net income earned in 1942 and 1943. In view of these facts, we think that his shares of income, $7,432.73 in 1942, and $7,960.08 in 1943, may be taken as compensation

for services rendered and his distributive share of net profits as a partner.

It follows that the net profits remaining after the allowance of petitioner's remuneration for services and his son's share of net income should be divided between petitioner and his wife in a ratio of 2 to 1, which reflects their relative contributions of business capital. Consequently, we hold that the compensation for petitioner's services, as determined above, and his distributive share of net profits, to be calculated in a recomputation, are taxable to him in the years here involved.

*Decision will be entered under Rule 50.*